IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| ADAM S. MORALES | § | |
| VS. | § | CIVIL ACTION NO. 9:17-cv-94 |
| GREG ABBOTT, ET AL. | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Adam S. Morales, an inmate formerly confined at the Polunsky Unit of the Texas Department of Criminal Justice, Correctional Institutions Division, proceeding *pro se* and *in forma pauperis*, brings this action pursuant to 42 U.S.C. § 1983.  Plaintiff sues Greg Abbott, Brian Collier, Robert Grant, Eva Shiver, Tod Harris, and Michael Butcher.

The above-styled action was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 and the Local Rules for the Assignment of Duties to the United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Discussion

Plaintiff, an inmate confined in the Security Housing Unit ("SHU") at the Polunsky Unit, brings this action claiming his prolonged confinement in administrative segregation violates the Eighth and Fourteenth Amendments.  Additionally, Plaintiff asserts claims under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA").

Plaintiff claims he has been confined in solitary confinement since coming to the Texas Department of Criminal Justice, Correctional Institutions Division in 2009 due to being validated as a member of the EME,[1] an identified Security Threat Group ("STG"), based on his tattoos. During 2016, Plaintiff states he was assigned to the Polunsky Unit and housed in the Security Housing Unit due to his identification as a gang member.

---

[1] The court interprets EME to refer to the Spanish term "La Eme" which is used to refer to the criminal organization and prison gang known as the Texas Mexican Mafia.  *See United States v. Valles*, 484 F.3d 745, 747 (5th Cir. 2007) (detailing the history and organization of the Texas Mexican Mafia).

First, Plaintiff complains that his confinement in the Security Housing Unit poses and unreasonable risk to his health and safety, amounting to cruel and unusual punishment. While housed in the Security Housing Unit, Plaintiff claims he is confined for twenty-two and one-half hours to twenty-four hours per day in a concrete cell with only one small window approximately three inches wide vertically by four feet wide horizontally. Additionally, Plaintiff claims he is ineligible for telephone calls, contact visits, as well as vocational, recreational, educational, and religious programming. Plaintiff claims Defendants Abbott, Collier, Grant, and Harris have persistently denied him the normal human contact necessary for a person's mental and physical well-being.

According to Plaintiff, being housed in administrative segregation with the "STG label" makes an offender ineligible for good time credits, has a negative impact during parole review, and makes the offender ineligible for an individualized treatment program, as well as life skills, GED, or vocational/trade school education regardless of good behavior. Further, Plaintiff claims the STG label makes him ineligible to be housed in the general population of the prison.

As a confirmed gang member, Plaintiff claims his release from the SHU is contingent upon his completion of the Gang Renouncement and Disassociation ("GRAD") program. Plaintiff complains that the GRAD program "requires prisoners to 'divulge secret information about the gang.'" (Doc. 19-2 at 13.) Plaintiff also asserts that upon completion of GRAD, prisoners must first agree to sign a waiver claiming TDCJ is not liable for any potential injury to the prisoner before his release to general population housing. *Id.* Plaintiff claims the GRAD program is a dangerous program because it requires prisoners to give prison authorities secret information about the gang which can result in serious injury or death to a prisoner who participates in the program.

Next, Plaintiff complains of the alleged denial of due process. Plaintiff states that TDCJ places prisoners who have been validated as gang affiliates into the Security Housing Unit for an indefinite term. Plaintiff claims TDCJ identifies prison gang affiliates through a process called prison gang validation, ignoring the individual prisoner's actual behavior. Plaintiff states that once

2

a prisoner is validated as a gang affiliate and sent to the Security Housing Unit, the prisoner is entitled to periodic reviews of his validation and reviews of the paperwork in the prisoner's file. However, he complains that if a prisoner, such as himself, is unwilling to "debrief," his annual hearing by the Administrative Segregation Committee allows no possibility for release from the Security Housing Unit.

Plaintiff claims he has experienced anxiety, hypersensitivity, depression, and post-traumatic stress disorder, which he never experienced before being housed in the Security Housing Unit. Plaintiff claims he has serious physical ailments and illnesses caused or exacerbated by his prolonged incarceration under harsh conditions in the Security Housing Unit, including eye and vision problems, migraine headaches, chronic back pain, and insomnia. Additionally, Plaintiff claims that after filing his original complaint, his anxiety due to confinement in the Security Housing Unit worsened and he could not move half of his face. Plaintiff claims the medical department at the Polunsky Unit informed him he was suffering from Bell's palsy[2] due to his stress and anxiety.

Plaintiff claims that Defendants Abbott, Collier, Grant, and Harris implemented, and enforced, the STG policy, ASDP policy, and Ad Seg policy which subjected him to live in prison conditions known to cause serious mental, and psychological deterioration, and irreparable harm. Additionally, Plaintiff claims the policies are known to cause serious physical illnesses, and to exacerbate the physical illnesses of prisoners. Plaintiff claims Defendants Abbott, Collier, Grant, and Harris were deliberately indifferent to his health and safety needs by their failure to alleviate his extended psychological torture by releasing him from the Security Housing Unit and housing him in general population housing. Additionally, Plaintiff claims that the implementation and enforcement of the GRAD policy is deliberately indifferent to his health and safety needs. Further,

---

[2] Bell's palsy is "a condition that the National Institute of Neurological Disorders and Stroke describes as a form of temporary facial paralysis, which is not related to stroke, with symptoms that might include drooping of the eyelid and corner of the mouth, impaired speech, and dizziness." *See Scott v. Memorial Health Care System, Inc.*, 660 F. App'x 366, 368 (6th Cir. Aug. 22, 2016).

Plaintiff claims the unreasonable risk to his health and safety have continued after Defendant Harris retired and was replaced by Defendant Butcher and after Defendant Grant retired and was replaced by Defendant Shiver.

Finally, Plaintiff claims he is considered handicapped and Defendants Abbott, Collier, Shiver, and Butcher have discriminated against him, in violation of the ADA and RA, by failing to make accommodations for him to be housed in general population housing. Plaintiff claims he has been diagnosed with Hepatitis C, and his liver disease and Bell's Palsy make him a qualified person with a disability. Additionally, Plaintiff claims Defendants Abbott, Collier, Shiver, and Butcher have continued to violate his rights under the ADA and RA by denying him access to programmatic activities such as vocational, recreational, educational, religious services, as well as other programs and activities.

## The Defendants' Motion to Dismiss

Pending before the court is a Motion to Dismiss filed by Defendants Bryan Collier, Todd Harris, Robert Grant, Eva Shiver, and Michael Butcher. (Doc. 50.) The Defendants contend Plaintiff is not entitled to compensatory damages under the PLRA because he has not pleaded a physical injury that is more than *de minimus*. The Defendants claim Plaintiff's allegations regarding his conditions of confinement do not rise to the level of deliberate indifference, and Plaintiff has not shown they implemented an unconstitutional policy in relation to his conditions of confinement. Next, the Defendants assert that Plaintiff has not stated a Fourteenth Amendment due process claim. Further, the Defendants contend Plaintiff has not shown they violated the ADA or RA. Finally, the Defendants assert Plaintiff has failed to state a claim that they violated any of his constitutional rights. Therefore, the Defendants contend they are entitled to qualified immunity.

## Standard of Review

An *in forma pauperis* proceeding may be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) if it: (1) is frivolous or malicious, (2) fails to state a claim upon which relief may be granted or (3) seeks monetary relief from a defendant who is immune from such relief.

*Frivolous*

A complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Geiger v. Jowers,* 404 F.3d 371, 373 (5th Cir. 2005); *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997). A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory. *See Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997).

In addition to the legal basis of the complaint, Section 1915 empowers the court to pierce the veil of the complainant's factual allegations if they are clearly baseless. *Denton v. Hernandez,* 504 U.S. 25, 32 (1992); *Ancar v. Sara Plasma, Inc.,* 964 F.2d 465 (5th Cir. 1992). A complaint lacks an arguable basis in fact if, after providing the Plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless*. Denton*, 504 U.S. at 32.

In *Denton v. Hernandez*, the Supreme Court "declined the invitation to reduce the clearly baseless inquiry to a monolithic standard." *Denton*, 504 U.S. at 33. Examples of complaints within the clearly baseless inquiry are those which describe fanciful, fantastic, or delusional scenarios. A complaint is factually frivolous if the facts alleged rise to the level of the irrational or wholly incredible. Pleaded facts which are merely improbable or strange, however, are not clearly baseless for Section 1915(d) purposes. *Id.*

*Federal Rule of Civil Procedure 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A complaint fails to state a claim upon which relief may be granted if the factual allegations are not sufficient to raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Dismissal for failure to state a claim is appropriate when the Plaintiff has failed to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. 544, 570). Plaintiffs must state

enough facts to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. 544, 570.

In considering whether to dismiss a complaint for failing to state a claim upon which relief may be granted, all factual allegations in the complaint must be taken as true and construed favorably to the Plaintiff. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). However, conclusory allegations and a formulaic recitation of the elements of a cause of action will not suffice to prevent dismissal for failure to state a claim. *Twombly,* 550 U.S. at 555.

*Federal Rule of Civil Procedure 12(b)(1)*

Federal Rule of Civil Procedure 12(b)(1) requires dismissal of an action if the court lacks jurisdiction over the subject matter of Plaintiff's complaint. FED. R. CIV. P. 12(b)(1). The Rule allows a party to challenge the subject-matter jurisdiction of a district court based on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). The party asserting the existence of jurisdiction bears the burden of proof once a court's subject-matter jurisdiction is challenged. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

*Qualified Immunity*

The doctrine of qualified immunity affords protection to officials against individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (*quoting Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Qualified immunity shields government officials "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Fraire v. Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992), *citing Anderson v Creighton*, 483 U.S. 635, 638 (1987).

Federal courts have traditionally used a two-step test to determine whether defendants are entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Freeman v. Texas Dep't*

*of Criminal Justice*, 369 F.3d 854, 863 (5th Cir. 2004). First, the court must consider whether "the facts alleged show the officer's conduct violated a constitutional right." *Id.* Second, if a constitutional right was violated, the court must decide whether the right was clearly established at the time of the violation. *Id.* "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'" *Hope*, 536 U.S. at 739 (*quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987), *internal citations omitted)*. "[A] state actor is entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions." *McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2004). A plaintiff must prove that the officer's actions were objectively unreasonable within that legal context. *See Saucier*, 533 U.S. at 206; *Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir. 1998). The Supreme Court held that the rigid structure of *Saucier* is no longer required and that the "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in the light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

<u>Analysis</u>

I.   *Elements of a Cause of Action under 42 U.S.C. § 1983*

Title 42 U.S.C. § 1983 authorizes a suit in equity, or other proper proceeding for redressing violations of the Constitution and federal law by those acting under color of state law. *See Nelson v. Campbell*, 541 U.S. 637, 643 (2004); *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.

II.     *Americans with Disabilities Act and Rehabilitation Act*

    A. Individual Capacity

The Americans with Disabilities Act ("ADA") is a federal anti-discrimination statute intended to eliminate discrimination against individuals with disabilities. *Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002). "The Rehabilitation Act was enacted to ensure that handicapped individuals are not denied jobs or other benefits because of prejudiced attitudes or ingnorance of others." *Cyrilien v. Tex. Dep't of Crim. Just.*, No. 23-20145, 2023 WL 8434054 at *1 (5th Cir. Dec. 5, 2023). Title II of the ADA permits suits by private citizens for monetary damages against public entities that violate 42 U.S.C. § 12132. Under the ADA, the rights and remedies available almost duplicative of those under the Rehabilitation Act ("RA"). *See* 42 U.S.C. § 12133 (incorporating by reference 29 U.S.C. § 794(a); *Bennett-Nelson v. La. Bd. of Regents,* 431 F.3d 448, 455 (5th Cir. 2005). "Because the ADA was also enacted to prevent discrimination against individual[s] with disabilities, and because the language in the statues contain parallel language, '[j]urisprudence interpreting either section is applicable to both.'" *Id.* (quoting *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000). Therefore, the court will consider Plaintiff's ADA and RA claims together in this case because the two statutes provide parallel remedies.

Although Title II provides disabled persons redress for discrimination by a public entity, it does not, by statutory definition, include individuals. 42 U.S.C. § 12131(1). The Fifth Circuit has recognized that a plaintiff cannot sue an individual under the Rehabilitation Act, 29 U.S.C. § 794(a), which provides a comprehensive remedial framework and enforcement provisions similar to the ADA. *See Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999). Likewise, Plaintiff may not sue the Defendants in their individual capacities under the ADA because the rights and remedies under the ADA and the RA are the same. *See Nottingham v. Richardson*, 499 F. App'x 368, 376 n.6 (5th Cir. 2012) (noting that only the "entity" is amenable to suit and a Plaintiff may not sue Defendants in their individual capacities under the ADA). Accordingly, Plaintiff's ADA and RA claims against

all the Defendants in their individual capacities should be dismissed for lack of subject matter jurisdiction.

      B. Official Capacity

The ADA states the following: "[s]ubject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. § 12132. The Act specifically provides that the remedies, procedures, and rights set forth in Section 504 of the Rehabilitation Act, shall be the remedies, procedures, and rights this title provides to any person alleging discrimination because of a disability in violation of Section 12132. *See* 29 U.S.C. § 794; 42 U.S.C. § 12133. The RA states, in pertinent part the following: "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

To state a claim under either the ADA or RA, Plaintiff must show "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability." *Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F. 3d 565, 574 (5th Cir. 2018) (quoting *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011)). Further, "A plaintiff can recover money damages only if he proves the defendant committed a violation of the ADA or RA and that the discrimination was intentional." *Id*. "Prison officials need not anticipate an inmate's unarticulated need for accommodation or to offer an accommodation *sua sponte*; the inmate must provide evidence of his disability and the severity of the physical limitations resulting from it, and he must request an accommodation." *Bolz v. Collier*, No. 1:16cv503, 2019 WL 2246568 at *5 (5th Cir. Apr. 17, 2019).

A disability is "physical impairment that substantially limits one or more major life activities; . . . a record of such an impairment; or . . . being regard[ed] as having such an

impairment." *Haralson v. Campuzano*, 356 F. App'x 692, 697-98 (5th Cir. 2009) (citing 42 U.S.C. § 12102(1)). Major life activities are "those activities that are of central importance to most people's every day lives." *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007).

Plaintiff claims he has been diagnosed with Hepatitis C, and that his liver disease and Bell's Palsy make him a qualified person with a disability. Plaintiff claims the policies, regulations and procedures implemented by the Defendants discriminate against him by failing to make accommodations for Plaintiff to be housed in general population custody. Additionally, Plaintiff contends as a result of these policies, regulations and procedures, he is excluded from participation in or denied the benefits of the prison's educational, recreational, vocational and work programs.

To state a viable claim under the ADA and RA, Plaintiff must allege facts showing exclusion from a service, program, or activity, and he must show his exclusion from such was based upon his disability. *See Davidson v. Texas Dep't of Criminal Justice*, 91 F. App'x 963, 965-66 (5th Cir. 2004) (affirming dismissal of prisoner's ADA claim because he failed to allege or show that he was adversely treated solely by reason of a disability); *Hay v. Thaler*, 470 F. App'x 411, 418 (5th Cir. 2012) (same). Here, Plaintiff's allegation that prisoners in administrative segregation are denied vocational, recreational, education, and religious programming because of their classification is insufficient to state a claim under the ADA and RA. Plaintiff, in essence, concedes the exclusion from the services, programs or activities is based upon his classification in administrative segregation and not general population.

Furthermore, even assuming, *arguendo*, that Plaintiff has a qualifying disability, Plaintiff has also failed to allege any facts suggesting that Defendants had the subjective intent to discriminate against him because of his disability. Plaintiff's core complaint is that he is being held in the Security Housing Unit, a form of administrative segregation, as a result of his gang affiliation. Plaintiff does not and cannot allege he is being held in administrative segregation because of his alleged disabilities. This court will not "strain to find inferences favorable to plaintiff" or "accept conclusory allegations, unwarranted deductions, or legal conclusions." *Southland Sec. Corp.*

*INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 351 (5th Cir. 2004) (internal quotation marks and citations omitted).

Therefore, Plaintiff cannot establish he was "excluded from participation in or denied the benefits of" any program within the ambit of ADA or RA and, thus, cannot establish that he was denied or excluded from any program by the Defendants "because of his disability." Plaintiff's ADA and RA claims against the Defendants should be dismissed for failure to state a claim upon which relief may be granted.

III. *Due Process*

Plaintiff claims he has been denied due process in violation of the Fourteenth Amendment. Plaintiff states that TDCJ places prisoners who have been validated as gang affiliates into the Security Housing Unit for an indefinite term. Plaintiff claims TDCJ identifies prison gang affiliates through a process called prison gang validation, ignoring the individual prisoner's actual behavior. Plaintiff states that once a prisoner is validated as a gang affiliate and sent to the Security Housing Unit for an indefinite term, the prisoner is entitled periodic reviews of his validation and reviews of the paperwork in the prisoner's file. However, he complains that if a prisoner, such as himself, is unwilling to "debrief," his annual hearing by the Administrative Segregation Committee allows no possibility for release from the Security Housing Unit. Additionally, Plaintiff claims he has been denied meaningful review or notice of what he can do to get released from the SHU apart from providing information that he does not have or, risking his life and safety and that of his loved ones by debriefing to GRAD and the Administrative Segregation Diversion Program ("ASDP").

In order to state a Fourteenth Amendment Due Process claim, a Plaintiff must show he was deprived of a liberty interest protected by the Fourteenth Amendment. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *Coleman v. Dretke*, 395 F.2d 216, 221 (5th Cir. 2004). A liberty interest can arise from either the Constitution itself or from an "expectation or interest created by state laws or policies." *Id.* Prisoners generally have no constitutionally-protected property or liberty interest in participating in rehabilitations programs. *Moody v. Doggett*, 429 U.S. 78, 88 n.9 (1976); *Bulger v.*

*Bureau of Prisons*, 65 F.3d 48, 49 (5th Cir. 1995). Further, there is no liberty interest in release on parole in Texas.

As a general rule, "[a]n inmate has neither a protectible property nor liberty interest in his custody classification." *Moody v. Baker*, 857 F.2d 256, 257-58 (5th Cir. 1988)( per curiam). Great deference is accorded to prison officials in their determination of custodial status. *See Wilkerson v. Goodwin*, 774 F.3d 845, 852 (5th Cir. 2014). Thus, "absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life as a prisoner, will never be a ground for a custodial claim." *Pichardo v. Kinker,* 73 F.3d 612, 612 (5th Cir. 1996). Further, Texas prisoners have no constitutional right to parole. *See Stout v. Stephens*, 856 F. App'x 558, 559 (5th Cir. 2021) ("We have determined repeatedly that Texas law and regulations do no create a constitutionally protected liberty interest in parole"). In Texas, it is entirely speculative whether an inmate will actually obtain parole, inasmuch as there is no right to be released on parole." *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997).

"Solitary confinement is typically viewed as an ordinary, expected, and permissible incident of prison life." *Bailey v. Fisher*, 647 F. App'x 472, 474 (5th Cir. 2016). Segregated confinement, in other words, is not grounds for a due process claim under the Fourteenth Amendment unless it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995). However, such confinement can be used in a way that crosses the line, as recognized by the Supreme Court in *Wilkinson*, ruling that an inmate's transfer to Ohio's "supermax" prison "imposes an atypical and significant hardship" given the combination of extreme isolation of inmates, prohibition of almost all human contact, indefinite duration of assignment, and disqualification for parole consideration of otherwise eligible inmates. *Wilkinson.* 545 U.S. at 223-24.

The Fifth Circuit recently held that there is no threshold for length of confinement that triggers atypicality and district courts should apply a nuanced analysis looking at the length and conditions of confinement on a case-by-case basis to determine whether segregated conditions

12

present a dramatic departure from the ordinary incidents of prison life such that they give rise to a liberty interest. *See Carmouche v. Hooper*, 77 F. 4th 362, 367 (5th Cir. 2023). Any assessment of a prisoner's confinement in administrative segregation "must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts." *Estate of DiMarco v. Wyoming Dept. of Corrections*, 473 F.3d 1334, 1342 (10th Cir. 2007); *Sandin*, 515 U.S. at 482-84.

In *Wilkinson*, the Supreme Court noted that "[s]ave perhaps for the especially severe limitations on all human contact, these conditions likely would apply to most solitary confinement facilities." *Wilkinson*, 545 U.S. at 224. But, the Court cautioned that there were two added components in that case. "First is the duration . . . . Second is that placement disqualifies an otherwise eligible inmate for parole consideration." *Id.*

While the length of confinement in this case is substantial, Plaintiff's length of confinement does not compare to the "extraordinary duration" of 39 years experienced in *Wilkerson*. *See Wilkerson*, 774 F.3d at 855. Additionally, the severity of the conditions of confinement in this case when compared to other cases are not sufficiently sever to constitute a dramatic departure from the ordinary incidents of prison life as to give rise to a liberty interest under *Sandin*. Restrictive confinement like Plaintiff's is grounds for a due process claim only if it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Lavergne v. Stutes*, 82 F.4th 433, 436 (5th Cir. 2023) (quoting *Sandin*, 515 U.S. at 484). However, Plaintiff has not alleged the deprivation of one of life's necessities or that the conditions he faced were onerous enough to constitute an atypical prison situation. *See Richardson v. Lumpkin*, No. 21-50049, 2022 WL 16707985 at *1 (5th Cir. No. 4, 2022) (finding years-long confinement in administrative segregation within TDCJ did not constitute an atypical prison situation).

Further, the duration of confinement in this case is not for an indefinite time period, rather it depends on when or if the inmate chooses to renounce his gang membership. Plaintiff essentially holds the key to his release from the restrictive conditions by deciding to participate in the GRAD

program, an option which he has refused to exercise up to this point. Because Plaintiff can affect his housing assignment and be released to general population with his willingness to renounce and participate in the GRAD program, the nature of his restricted housing is ameliorated by TDCJ's GRAD program. *Hernandez v. Abbott*, No. 9:20cv196, 2021 WL 11721407 (E.D. Tex. July 18, 2021), *R&R adopted*, 2023 WL 6060346 (E.D. Tex. Sept. 18, 2023); *see also Queen v. Adams*, No. 2:11cv221, 2012 WL 1081227 at *3 (N.D. Tex. 2012), *R&R adopted*, 2012 WL 1106716 (N.D. Tex. Mar. 30, 2012) (finding Plaintiff's confinement in administrative segregation because of his Security Threat Group classification did not trigger due process concerns even though Plaintiff argued that he could remain in administrative segregation until he discharges his sentence if he does not renounce his gang membership).

Additionally, unlike the Supermax confinement at issue in *Wilkinson*, the confinement here does not eliminate the possibility of parole for an otherwise eligible inmate. *See Wilkinson*, 545 U.S. at 223. While Plaintiff contends that confinement in the Security Housing Unit may have a negative impact on his parole review or release on parole, he concedes parole is not eliminated. (Doc. 19-2 at *7, 8, and 17.)

Finally, as observed in *Wilkinson*, in the context of prison management, the State's interest of ensuring the safety of guards and prison personnel, the public, and the prisoners themselves is a dominant consideration. *Wilkinson*, 545 U.S. at 227. "Murder of an inmate, a guard, or one of their family members on the outside is a common form of gang discipline and control, as well as a condition for membership in some gangs." *Id.* Here, Plaintiff seeks release to the general prison population without renouncing his gang membership. Plaintiff's release from administrative segregation as a confirmed gang member, however, could endanger the prisoner general population, as well as guards. The government has a strong interest with respect to prison security and order when dealing with gangs; "prisons have a legitimate penological interest in stopping prison gang activity." *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003); *see Wilkinson*, 545 U.S. at 227 ("in the contest of prison management, . . . [the state's] interest is a dominant consideration"). Thus, in

this case, Plaintiff's allegations fail to establish conditions warranting a liberty interest in avoiding such conditions and fail to state a claim upon which relief may be granted.

Even assuming a liberty interest exists, however, the process afforded prisoners by TDCJ at the Polunsky Unit in periodic reviews is constitutionally adequate. *See Hope v. Harris*, 861 F. App'x 571, 580-81 (5th Cir. 2021). Thus, even accepting Plaintiff's allegations as true and viewing them in the light most favorable to him, the government's interest outweighs Plaintiff's interest, and the process provided to him is adequate to satisfy the constitutional requirements of the Fourteenth Amendment. Therefore, Plaintiff has failed to state a claim upon which relief may be granted and the Defendants are entitled to qualified immunity. Accordingly, the Defendants' Motion to Dismiss should be granted.

IV.     *Cruel and Unusual Punishment*

Plaintiff alleges that his confinement in the Security Housing Unit poses and unreasonable risk to his health and safety, amounting to cruel and unusual punishment. Plaintiff claims he is confined for twenty-two and one-half hours to twenty-four hours per day in a concrete cell with only one small window approximately three inches wide vertically by four feet wide horizontally. Additionally, Plaintiff asserts he is ineligible for telephone calls, contact visits, as well as vocational, recreational, educational, and religious programming. Further, Plaintiff claims that being housed in administrative segregation with the "STG label" makes an offender ineligible for good time credits and has a negative impact during parole review.

"It is well settled that 'the Constitution does not mandate comfortable prisons, and that prison conditions may be 'restrictive and even harsh' without running afoul of the Eighth Amendment." *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981)). The Eighth Amendment requires that cruel and unusual punishment shall not be inflicted, U.S. CONST. amend. VIII, and requires that prison officials "provide humane conditions of confinement; they must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to ensure the safety of the

inmates." *Gates v. Cook*, 376 F.3d 323, 332 (5th Cir. 2004). "And, conditions of confinement may be aggregated to rise to the level of a constitutional violation 'when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.'" *Hope*, 861 F. App'x at 582 (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (explaining that there may be an Eighth Amendment violation where a prisoner complained of a 'low cell temperature at night combined with a failure to issue blankets)).

"To state a claim for a violation of the Eighth Amendment based on conditions of confinement, a prisoner must allege (1) that the prison conditions pose a significantly serious threat to his health, including his mental health, and (2) that prison officials acted with deliberate indifference to such threat." *Hope*, 861 F. App'x at 582. Long term solitary confinement is not per se cruel and unusual. *Hutto v. Finney*, 437 U.S. 678, 686 (1978). But, "[t]here is a line where solitary confinement conditions become so severe that its use is converted from a viable prisoner disciplinary tool to cruel and unusual punishment." *Gates v. Collier*, 501 F.2d 1291, 1304 (5th Cir. 1974).

In order to meet the first requirement, Plaintiff must show that the "conditions, either alone or in combination, constitute an unquestioned and serious deprivation of his basis human needs such as food, clothing, medical care, and safe and sanitary living conditions." *Hope*, 561 F. App'x at 582 (internal quotation omitted). "Further, under the Eighth Amendment, 'the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards.'" *Id.* at 583 (quoting *Hutto*, 437 U.S. at 686).

The length of Plaintiff's confinement in restricted housing is substantial in this case. While that has been considered, Plaintiff has not shown that he faces conditions so dire as to deprive him of the minimal civilized measure of life's necessities as required to establish an Eighth Amendment violation on the facts of this particular case. Plaintiff does not allege he has been deprived of food, clothing, shelter, hygiene or medical care. Further, while his conditions are restrictive because he is not allowed telephone calls, contact visits, as well as vocational, recreational, educational, and

religious programming, Plaintiff does not assert that he cannot receive regular visitation or engage in some form of exercise or other recreation during his time out of the cell.

The Fifth Circuit recently found that confinement to a cell for twenty-three hours per day when able to receive visitors, converse with other inmates, and engage in some form of exercise or other recreation does not violate the Eighth Amendment. *See Lavergne*, 82 F.4th at 436. Additionally, there is no constitutional right for prisoners to be provided educational or vocational programs. *Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir. 1988). Further, unlike the prisoner in *Wilkinson*, 545 U.S. 209, the Plaintiff in this case complains that his confinement in restrictive housing has a negative impact during parole review, not that he was determined ineligible for parole.

The conditions alleged by Plaintiff do not evidence a deprivation of the minimal measures of life's necessities or a basic human need. Further, even assuming, *arguendo*, that Plaintiff's claims of general malaise such as depression, back pain, headaches, vision problems, and Bell's palsy were caused by his confinement in restrictive housing, Plaintiff has failed to show these conditions posed a substantial risk of serious harm.

Finally, Plaintiff has failed to show any of the Defendants acted with deliberate indifference to a substantial risk of serious harm. Deliberate indifference is "an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). The United States Supreme Court has adopted "subjective recklessness as used in the criminal law" as the appropriate definition of deliberate indifference under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 839-40 (1994). Under this definition, a prison official cannot be found liable under the Eighth Amendment unless the official knows of and disregards an excessive risk to inmate health or safety. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference. *Farmer*, 511 U.S. at 837. Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk. *Id*; *Reeves v. Collins*, 27 F.3d 174 (5th Cir. 1994).

Plaintiff argues that Defendants Abbott, Collier, Grant, and Harris are responsible because they implemented and enforced the GRAD program. (Doc. #19-2 at 15.) Additionally, Plaintiff contends that the Defendants "are charged with knowledge" of the dangers of solitary confinement through different articles, as well as statements made by Senator John Whitmire. Further, Plaintiff argues that Collier, Shiver, and Butcher were deliberately indifferent to his health and safety needs by "their continued failure to alleviate . . . [his] psychological torture by releasing him out of the Security Housing Unit and housing him in general population inmate housing.

As explained above, Plaintiff essentially holds the key to his release from the restrictive conditions by deciding to participate in the GRAD program, an option which he has refused to exercise up to this point. Because Plaintiff can affect his housing assignment and be released to general population with his willingness to renounce and participate in the GRAD program, the nature of his restricted housing is ameliorated by TDCJ's GRAD program. *Hernandez*, 2021 WL 11721407 at *10.

Moreover, Plaintiff has failed to show any personal involvement or causal connection of the Defendants in a constitutional deprivation. The fact that grievances were received does not show personal involvement in a constitutional deprivation. Even assuming, *arguendo*, that the policies were found unconstitutional, "[a]ctions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity. *Alton v. Texas A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999). To show deliberate indifference, a Plaintiff must establish that an official consciously disregarded a substantial risk of serious harm. *Doe v. Robertson*, 751 F.3d 383, 392 (5th Cir. 2014). Plaintiff has failed to satisfy this burden.

As Plaintiff has failed to show his confinement deprived him of the minimal measures of life's necessities or that prison officials acted with deliberate indifference, he has failed to state a claim upon which relief may be granted. Therefore, the Defendants are entitled to qualified

immunity. Accordingly, the Defendants' Motion to Dismiss should be granted as to Plaintiff's Eighth Amendment claim.

## Recommendation

The Defendants' Motion to Dismiss should be granted. Plaintiff's complaint should be dismissed.

## Objections

Within fourteen days after being served with a copy of the magistrate judge's report, any party may serve and file written objections to the findings of facts, conclusions of law and recommendations of the magistrate judge. 28 U.S.C. § 636 (b)(1)(C).

Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within fourteen days after service shall bar an aggrieved party from the entitlement of *de novo* review by the district court of the proposed findings, conclusions and recommendations and from appellate review of factual findings and legal conclusions accepted by the district court except on grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

**SIGNED this the 27th day of February, 2024.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE